UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

GARY WILLIAMS, Individually and on )
behalf of all others similarly situated, )
          Plaintiffs, )
  )
    vs. )            4:04-CV-0078-SEB-WGH
  )
ROHM AND HAAS PENSION PLAN, )
      Defendant. )

**ENTRY DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT
AND GRANTING PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Gary Williams ("Williams") filed suit, on behalf of himself and a class of similarly

situated individuals (the "Class" or "Plaintiffs"), contending that the  Rohm and Haas

Pension Plan[1] (the "Plan" or "Defendant") violated the Employee Retirement Income

Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001 et seq., by failing to

include the value of a cost-of-living adjustment ("COLA") in his lump sum distribution

from the Plan.[2]

---

[1] As a result of the merger of the Morton International, Inc. Pension Plan with and into the Rohm and Haas Pension Plan and the addition of a new benefit formula, the Rohm and Haas Pension Plan was amended and renamed effective April 1, 2001, as the Rohm and Haas Company Retirement Plan.  Def. Mem. for Summ. J. at 4.  The governing Plan document in effect at the time of Williams's distribution from the Plan in 1997, was referred to in Patricia Coyle's deposition as the "Legacy Plan," which was the Rohm and Haas Pension Plan, as amended and restated effective December 31, 1994. (AR00022-00110).

[2] On October 22, 2004, the Court certified a class of plaintiffs in these terms:

"All former participants in the Rohm & Haas Pension Plan (the "Plan") who

(continued...)

This matter comes before the Court on the Plan's and Williams's cross motions for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure.[3]  For the reasons outlined below, we <u>DENY</u> Defendant's Motion for Summary Judgment and <u>GRANT</u> Plaintiffs' Motion for Summary Judgment.

<u>Introduction</u>

A.    *Summary of Defendant's Motion for Summary Judgment*

Defendant contends that both of the ERISA remedial provisions under which Williams's one-count complaint arises—Sections 502(a)(1)(B) and 502(a)(3)—suffer from procedural and substantive flaws, which bar Plaintiffs from securing relief under either of them.  Def. Memo for S.J. at 1.  First, Defendant claims that Williams's ERISA Section 502(a)(1)(B) claim must be reviewed under the deferential arbitrary and capricious standard.  Under this standard, Defendant argues that the Rohm and Haas Benefits Administrative Committee's (the "BAC") decision to deny Williams's benefit claim must be upheld because it was reasonable based on the Plan's unambiguous terms.  Second, Defendant contends that Williams's claim for equitable relief under Section 502(a)(3) should be dismissed for at least two reasons:  (1) Williams cannot recover under

---

[2](...continued)
received a lump sum distribution from the Plan which did not take into account a cost of living adjustment in calculating the lump sum distribution."

Gary Williams was appointed Class Representative and his attorneys as class counsel.

[3] Williams filed his memo in support of summary judgment on behalf of the class on June 15, 2005; Defendant filed its motion for summary judgment also on June 15, 2005.

Section 502(a)(3) because he has pled a claim for relief under Section 502(a)(1)(B) through which he seeks the same relief; and (2) Williams does not seek "other appropriate equitable relief" under ERISA because the benefits he seeks in his complaint constitutes an award of monetary damages.

B.   *Summary of Plaintiffs' Motion for Summary Judgment*

Williams seeks summary judgment in favor of himself and the Class because: (1) the Plan included an automatic cost-of-living-adjustment ("COLA") as part of each participant's normal retirement benefit; (2) the COLA is an "accrued benefit," as defined by ERISA § 3(23), 29 U.S.C. § 1002(23), and Internal Revenue Code § 411(a)(7),  26 U.S.C. § 411(a)(7); (3) the Plan failed to specify the value of the COLA in the Class members' lump-sum distributions; and (4) as a result, the Class members unintentionally forfeited a portion of their accrued benefit and received less than the full present value of their benefit, in violation of ERISA and the implementing Treasury Regulations.

FACTUAL BACKGROUND

A.   Rohm and Haas Pension Plan

The Plan is a defined benefit pension plan within the meaning of Section 3(35) of ERISA, 29 U.S.C. §1002(35).  The Plan is sponsored by Rohm and Haas and was originally adopted to provide pension benefits for eligible employees of Rohm and Haas and its Affiliates in order to supplement retirement income benefits provided under the

Social Security Act.  (Complaint ¶ 2; AR 00159).[4]  The Plan has at all times maintained its tax qualified status under the Internal Revenue Code.  (AR00160).

Under the Plan, the Benefits Administrative Committee ("BAC") is the Plan Administrator as that term is defined under ERISA.  See 29 U.S.C. §1002(16)(A).  The BAC has full responsibility to represent Participating Employers and Participants in all things it may deem necessary for the Plan's proper administration, and, subject to the Plan's terms, the BAC's interpretation and administration of the Plan is conclusive. (AR00204).  Under Section 15.3 of the Plan, the BAC's responsibilities include (but are not limited to): (i) verifying all procedures by which payments to Participants and Beneficiaries are authorized; (ii) interpreting Plan provisions in all particulars; and (iii) reviewing and answering any denied claim for benefits that has been appealed to the BAC under the Plan's claims procedures.  (AR00204-205).

Under the Plan's claims procedures, in the case of an adverse benefit determination, the claimant or his representative has the opportunity to appeal a denied benefit claim to the BAC for review by requesting such review in writing within sixty days of receipt of notification of the denial.  In reviewing a claim appeal, the BAC considers all comments, documents, records, and other information submitted by the claimant or his representative relating to the claim, without regard to whether such information was submitted or considered in the initial benefit determination.

---

[4] References to "AR[No.]" are to the Administrative Record utilized to evaluate Williams's claim appeal for benefits under the Plan, Bates-stamped Nos. AR001-0337.  The Administrative Record was authenticated by Patricia Coyle in her January 26, 2005 deposition.

(AR00206-207, 228-229).  The BAC reviews the claim appeal, the claim appeal

summary, and other documents and information relevant to the claim, and votes to

approve or deny the claim.  The BAC members' votes are then sent to the BAC's

Secretary to be tallied, and a formal claim appeal response is prepared by the BAC's

Secretary for transmittal to the claimant.  (Coyle Dep. at 16-17).

      B.    <u>Plan's Definition of "Accrued Benefit" and "Normal Retirement Pension"</u>

Section 3.1 of the Plan defines "Accrued Benefit" to mean "that portion of a

Participant's Basic Amount of Normal Retirement Pension, expressed in terms of a

monthly single life annuity beginning at or after his Normal Retirement Date, that has

accrued as of any determination date in accordance with Article VII."  (AR00033).

Under Article VII, a Participant's "Normal Retirement Pension" is calculated

pursuant to a set formula, which multiplies a specific dollar amount (either a percentage

of the Participant's compensation or a set dollar amount) by the Participant's years of

Benefit Service accumulated at the time of retirement, subject to certain limitations.  The

Participant's Accrued Benefit is then expressed to the Participant in terms of a monthly

single life annuity as of the Participant's retirement date under Article VII.

(AR00052-57).

The Plan provides that a Participant may have his or her Normal Retirement

Pension distributed in a variety of payment forms, from monthly annuity payments to a

one-time lump sum payment at the time of retirement.  (AR00063-70). Article X of the

Plan requires the BAC to furnish each Participant or terminated Participant with a general

description of all payment options available, including a general explanation of the relative financial effect on a Participant's benefits of any of the available distribution forms.  This description typically includes the amounts available under each option, which would be actuarially equivalent to the Participant's Accrued Benefit determined at the time of his retirement.  (AR00063-64).  Under Section 12.1.4 of the Plan, a Participant may elect to receive a one-time lump sum distribution of the Actuarial Equivalent present value of his Accrued Benefit, as determined under Appendix D to the Plan.  (AR00068).

The Plan defines "Actuarial Equivalent" to mean "a benefit of equivalent actuarial value to the benefit that would otherwise have been provided to the Employee, determined on the basis of appropriate actuarial assumptions and methods set forth in Appendices A through D attached hereto."  (AR00033).  For purposes of determining the Actuarial Equivalent lump sum present value of a Participant's Normal Retirement Pension, Appendix D to the Plan sets forth the actuarial assumptions, which are limited to applicable interest rates and mortality tables to be used to determine the present value of a Participant's Normal Retirement Pension under the Plan, which are set by the Internal Revenue Code.  COLA adjustments are not mentioned or specifically provided for in Appendix D to the Plan.  (AR00105-107).

C.       Plan's Provisions Do Not Allow for COLAs on Lump Sum Distributions

Article XV of the Plan sets forth the rules governing the payment of a COLA enhancement to a Participant.  Specifically, Section 15.1 of the Plan states that a COLA enhancement may be paid only to Participants receiving monthly benefit payments—not

to Participants who elect to receive a lump sum payout: "Except as provided in Sections 15.3 and 15.4, beginning with pension payments in March, 1974 . . . any Participant or Beneficiary of an eligible Participant (or a Participant who would have been eligible except for age), <u>who is receiving monthly payments</u>, shall be entitled to an annual Cost-of-Living Adjustment as described below: . . . ." (AR00078; emphasis supplied).

Section 12.5 of the Plan also references the application of COLA enhancements, providing that "the Cost-of-Living Adjustment to pensions described in Article XV, shall apply <u>only to the monthly payments</u> to" a contingent annuitant or Beneficiary who survives a retired Participant. (AR00070).

The Plan's summary plan description ("SPD") states:

*What is a "COLA" and am I eligible to receive it?*
The cost of living adjustment or "COLA" is an annual adjustment to monthly payments from the Plan intended to keep pace with inflation. The amount of the annual increase is based on the increase in the Consumer Price Index for Urban Wage Earners and Clerical Workers for the previous year but is limited to no more than 3% of your annual benefit in any year. (AR00290).

<u>The COLA only applies to monthly payments; it does NOT apply if you receive your benefit in the form of a cash lump sum</u>. The COLA is a benefit enhancement which is not part of your Accrued Benefit under the Plan and is not required by law. The Plan may, at its discretion, eliminate the COLA at any time, regardless of whether it has made COLA payments in the past. (AR00290, emphasis added).

D.      <u>The BAC Denied Williams's Claim Appeal for Benefits Under the Plan</u>

Williams was employed by Rohm and Haas from December 1, 1969 through March 31, 1997, when his employment was terminated for violating Rohm and Haas'

Harassment Prevention and Correction Policy.  (AR00004, 49).  On March 31, 1997,

Williams elected to receive his Normal Retirement Pension under the Plan in the form of

a one-time lump sum payment under Plan Section 12.1.4.  Williams received as a lump

sum payment—$47,850.71—his Accrued Benefit under the Plan on May, 30, 1997.

(AR00001).   Six years thereafter, or about March 2003, Williams filed this class action

complaint alleging that he was wrongfully denied benefits under the Plan because his

lump sum payment did not include the value of the COLA he would have received had he

elected to receive his benefits monthly under an annuity distribution option.  (AR00018).

On September 26, 2003, we granted the Plan's motion to dismiss Williams's class action

complaint because Williams had failed to exhaust his available administrative remedies

under the Plan.  (Williams v. Rohm and Haas Pension Plan, No. NA-02-C-123, 2003 U.S.

Dist. LEXIS 17313 (S.D. Ind. Sept. 26, 2003)).

     On October 21, 2003, Williams, through his counsel, sent his administrative claim

for benefits not to the BAC directly, but to the Plan's litigation counsel, arguing that the

COLA enhancement added to monthly payments under the Plan is an accrued benefit and

therefore part of his normal retirement benefit under the Plan.  Williams claimed that if

his lump sum distribution had included the value of the COLA, his distribution amount

would have been larger than what he had received, prompting this request that he be paid

the additional benefits equal to the value of the COLA.  (AR00009-16).

     On February 2, 2004, Williams, again through his counsel, submitted a claim

appeal in which he incorporated all of the arguments raised and documents submitted in

his initial benefits claim.  (AR00008).  The BAC, through its Secretary Patricia Coyle ("Coyle"), received and processed the claim appeal in the standard fashion, which included her review and research as well as that of others on Rohm and Haas' benefits staff.  (Coyle Dep. at 17, 131-133).

On April 1, 2004, Coyle, on the BAC's behalf, sent Williams's counsel a letter, notifying him that Williams's claim appeal had been denied by the BAC.  In this letter, Coyle set forth the applicable Plan provisions on which the denial was based and explained the bases for the BAC's decision.  (AR000001-2).  Williams filed the instant lawsuit on April 2, 2004.  (Compl. at 1).

## LEGAL ANALYSIS

### I.    Standard of Review

Benefit determinations in ERISA cases, pursuant to 29 U.S.C. § 1132(a)(1)(B), are reviewed by the court *de novo*, unless the plan administrator has "discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989).  If the plan vests discretionary authority in the plan administrator, the standard of judicial review is based on an "arbitrary and capricious" analysis.[5]  Hightshue v. AIG Life Ins. Co., 135 F.3d 1144, 1147 (7th Cir.

---

[5] The Seventh Circuit has held that the arbitrary and capricious standard is highly deferential to a plan administrator. Under the arbitrary and capricious standard, the BAC's decision to deny Williams's benefits claim appeal should be overturned only if it is "downright unreasonable" and not merely incorrect.  Tegtmeier v. Midwest Operating Engineers Pension Trust Fund, 390 F.3d 1040, 1045 (7th Cir. 2004).  It is not the Court's function to decide whether it would reach the same conclusion as the Plan or even rely on

(continued...)

1998); see also Morgan v. Cigna Group Ins., 2003 WL 722804, *6 (S.D. Ind. 2003)

(Barker, J.).  However, the courts do not defer to the plan administrator's interpretation of

a federal statute.  See, e.g., McDaniel v. Chevron Corp., 203 F.3d 1099, 1108 (9th Cir.

2000).  In a case where the claim against the plan is not that the terms of the plan were

wrongly decided or construed, but that the plan itself is contrary to ERISA, then the

decisions of a plan administrator will be reviewed *de novo*, as those decisions involve

pure questions of law and the interpretation of the plan is not in dispute.  See Williams v.

Midwest Operating Engineers Welfare Fund, 125 F.3d 1138, 1140 (7th Cir. 1997).

     In this case, the Plaintiffs' claim against the plan is not that the terms of the plan

were wrongly decided or construed, but that the plan itself is contrary to ERISA.  In his

claim appeal, Williams admitted that he was ineligible to receive a COLA under the

Plan's terms.  See AR00009.  Instead, he argues that the Plan's terms violate ERISA and

the Internal Revenue Code.  See AR00009-15.  We review *de novo* the issue of ERISA's

legal requirements.[6]

---

[5](...continued)
the same authority.  Id.  If the Court determines that the BAC made an informed judgment
and articulated an explanation for its decision that is satisfactory in light of the relevant
plan's terms, the BAC's decision is deemed final and should not be disturbed.  See
Exbom v. Cen. States, S.E. & S.W. Areas Health &Welfare Fund, 900 F.2d 1138, 1143
(7th Cir. 1990).  The Court does not ask whether it, a jury or a different plan administrator
would have granted the benefits; questions of judgment or choices between competing
reasonable outcomes are left to the plan administrator.  Patterson v. Caterpillar, Inc., 70
F.3d 503, 505 n.3 (7th Cir. 1995).

[6] If the issue were simply whether the Plan's definition of "Accrued Benefit"
includes a COLA enhancement then Defendant would be correct that the appropriate

(continued...)

III.     Does ERISA Provide a Remedy through which Plaintiffs May Seek
to Recover for the Violation Alleged in the Complaint?

Williams has identified two, separate remedial provisions under which his ERISA

claim purportedly arises; (1) under ERISA Section 502(a)(1)(B)–he seeks to recover

benefits allegedly wrongfully denied him under the terms of the Plan; and (2) under

ERISA, Section 502(a)(3)–he and the Class seek recovery of their Plan benefits through a

declaration from the Court that BAC's decision to deny this claim appeal for benefits was

wrongfully decided under applicable law.  Defendant asserts that Williams's claim suffers

from both procedural and substantive flaws, which bar relief under either remedial

provision.  Def. Memo for S.J. at 1.

A.      **Williams's Wrongful Denial of Benefits Claim under ERISA
Section 502(a)(1)(B)**

Section 502(a)(1)(B) permits participants or beneficiaries to bring a civil action:

(1) to recover benefits due under the terms of his plan; (2) to enforce rights under the

terms of the plan; or (3) to clarify rights to future benefits under the terms of the plan.

See 29 U.S.C. §1132(a)(1)(B).  In May Dept. Stores v. Federal Ins. Co., 305 F.3d 597

(7th Cir. 2002) (Posner, J.), the pension plan was sued under ERISA § 502(a)(3) for

calculating lump sum distributions as amounts less than the present value of the normal

annuity (albeit in accordance with the plan terms).  On appeal of a subsequent coverage

---

[6](...continued)
standard of review would involve the deferential arbitrary and capricious standard in our
considering whether the BAC's interpretation of the Plan's terms was reasonable.  See
Def. Response at 7.  It is undisputed that the BAC is granted sufficient discretionary
authority to determine eligibility for benefits and to construe the terms of the plan.

case between the plan and plan sponsor, and the E&O carrier, the plaintiffs (May and the plan) argued that because the employees' claims against their employers were not based on the language of the plan but provisions of ERISA, the claims were not for "benefits." 305 F.3d at 601.  The Seventh Circuit disagreed.  Judge Posner explained:

> The benefits sought were plan benefits; the question was how to compute them. The answer was given by ERISA, but that is just to say that, like many other contracts, pension plans governed by ERISA contain provisions implied by law.

Id.

Defendant states that Williams cannot recover under Section 502(a)(1)(B) because: (1) it is undisputed that Williams's claim for increased benefits through inclusion of the COLA enhancement's future value in his lump sum payment is not permitted under the Plan's unambiguous terms; (2) that Williams does not seek to enforce any rights under the Plan's terms—rather, he seeks to recover additional benefits; and (3) that Williams cannot argue that he seeks to clarify his rights to future benefits under the Plan, as he received a lump sum payment of all of his Accrued Benefits under the Plan in 1997.  Therefore, Defendant argues, Williams is not entitled to any relief under Section 502(a)(1)(B) by the express terms of that ERISA remedial provision.

The reasoning in May Dept. Stores v. Federal Ins. Co., 305 F.3d 597 (7th Cir. 2002), provides guidance and leads to a conclusion different from that asserted by the Defendant.  Following May, it can fairly be said that Williams seeks to recover benefits wrongfully denied by the Plan.  Here, as in May, when determining how the Plan's

benefits are to be computed, the answer arises from the terms and provisions of ERISA. The Plan, which is governed by ERISA, incorporates provisions implied by law.  So, even if the Plan's unambiguous (and allegedly unlawful) terms prohibit the inclusion of a COLA in a lump sum payment, that requirement may nonetheless be implied by ERISA and entitle Williams to such a benefit.  Thus, Williams's effort is to recover "benefits due to him under the terms of his plan," even though those benefits are implied by ERISA, which law governs the Plan and is legally permissible.

### B.    Williams's Equitable Relief Claim under ERISA Section 502(a)(3)

Williams also brings his claims under Section 502(a)(3) seeking a "declaration" that the Plan violated ERISA.  Defendant contends that Williams's claim for equitable relief under Section 502(a)(3) should be dismissed for at least two reasons: (1) Williams cannot recover under Section 502(a)(3) because he has plead a separate claim for relief under Section 502(a)(1)(B) through which he seeks the same relief; and (2) Williams does not seek "other appropriate equitable relief" under ERISA because the benefits he seeks in his complaint in fact constitute a request for monetary damages.  Section 502(a)(3) of ERISA provides that:

> a civil action may be brought—by a participant, beneficiary, or fiduciary
> (A) to enjoin any act or practice which violates any provision of this title or
> the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to
> redress such violations or (ii) to enforce any provisions of this title or the
> terms of the plan.

See 29 U.S.C. §1132(a)(3).

 In Varity Corp. v. Howe, 516 U.S. 489 (1996) the Supreme Court of the United

13

States, addressing proper claims under Section 502(a)(3), held that "where Congress elsewhere provided adequate relief for a beneficiary's injury, there will likely be no need for further equitable relief, in which case such relief would normally not be 'appropriate.'" 516 U.S. at 515.  "In short, <u>Varity</u> does not force a plaintiff to elect his remedy before filing a complaint, but rather prohibits a plaintiff from receiving equitable relief under ERISA § 502(a)(3) in addition to some other form of relief. <u>Varity</u>, 516 U.S. at 515." <u>Laurenzano</u>, 134 F. Supp. 2d at 194 -195.  Thus, Williams is not foreclosed from seeking equitable relief under ERISA Section 502(a)(3), simply because he has also pled a claim for relief under Section 502(a)(1)(B).

 A year after <u>May</u> was decided, the Seventh Circuit had occasion to examine the interplay between ERISA §§ 502(a)(l)(B) and 502(a)(3) in <u>Berger v. Xerox Corp. Ret. Income Guar. Plan</u>, 338 F.3d 755, 763 (7th Cir. 2003) (Posner, J.).  There, citing <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), the Plan argued that the case could not be certified under Federal Rule of Civil Procedure 23(b)(2), because plaintiffs were not seeking injunctive or declaratory relief, "but really just damages equal to the difference between the lump sums to which ERISA entitled the members of the class and the smaller lump sums they actually received." 338 F.3d at 763. Although plaintiffs cast their case in terms of Section 502(a)(3), Judge Posner cited 502(a)(l)(B) and stated that the suit "is by plan participants suing 'to recover benefits.'" <u>Berger</u>, 338 F.3d at 763. The Court wrote:

What is sought is a declaration that [Defendant's] method of computing

14

lump sums to which withdrawing employees are entitled is unlawful. That is a ground common to all the members of the class. True, the declaration sought and obtained was merely a prelude to a request for damages (incorrectly described by the plaintiffs as a request for restitutionary relief equitable in nature - the monetary relief sought is not restitutionary, and if it were it would not be equitable, Great West Life & Annuity Ins. Co. v. Knudson, supra, 534 U.S. at 213-14; [citation omitted]).  But a declaratory judgment is *normally* a prelude to a request for other relief, whether injunctive or monetary; so there is nothing suspicious about the characterization of the suit as one for declaratory relief. The hope that motivates casting a request for relief in declaratory terms is that if the declaration is granted, the parties will be able to negotiate the concrete relief necessary to make the plaintiffs whole without further judicial proceedings. No one wants an empty declaration.

Id. at 763-64 (emphasis in original).  Therefore, a "declaration" that the Plan violates ERISA may constitute "other appropriate equitable relief," and is a permissible cause of action.

We agree with Plaintiffs, that in the wake of May and Berger, it appears that the appropriate method to address a pension plan whose terms violate ERISA is for the plaintiff to seek a declaration, pursuant to ERISA § 502(a)(3), that the plan's terms are indeed illegal (for example, because the plan's lump sum distribution provisions result in lump sums smaller than the present value of the normal retirement benefit).  At that point, the law implies that the Plan's provisions include such a requirement and benefits are payable pursuant to ERISA § 502(a)(1)(B).  Accordingly, we DENY Defendant's Motion for Summary Judgment on Williams's ERISA claim.

> IV.   Does the Plan comply with ERISA and, if not, were Williams and the Class injured in not receiving the full value of their Accrued Benefit with their lump sum distribution?

15

Williams alleges that the Plan violated certain sections of ERISA and the Internal Revenue Code by failing to calculate in his and the class's lump sum distributions the value of the COLA enhancement available under the Plan only to those receiving monthly payments of their Accrued Benefit.  Specifically, Williams argues that the Plan's definition of "Accrued Benefits" does not satisfy ERISA's definition of that term because the COLA enhancement was not included when calculating the value of his lump sum distribution.  The central issue in this litigation is whether the Plan's COLA enhancement, available to those Participants electing a monthly payment option, is an Accrued Benefit under ERISA and thus also available to Participants who elected the lump sum payment.

ERISA and the Internal Revenue Code mandate that if a defined benefit pension plan provides for a form of payment other than a life annuity beginning at normal retirement age (the"normal retirement benefit"), then this optional form must be the actuarial equivalent of the annuity.  Treasury Regulation 1-417(e)-d, 26 C.F.R. §1.417(e)-1d;[7] 29 U.S.C. 1054(c)(3); 26 U.S.C. 411(c)(3).  The Seventh Circuit in Berger v. Xerox Corp. Ret. Income Guar. Plan, 338 F.3d 755, 759 (7th Cir. 2003) (Posner, J.),

---

[7] Treasury Regulation 1.417(e)- 1(d) states:

A defined benefit plan must provide that the present value of any accrued benefit and the amount (subject to sections 411(c)(3) and415) of any distribution, including a single sum, must not be less than the amount calculated using the applicable interest rate described in paragraph (d)(3) of this section (determined for the month described in paragraph (d)(4) of this section) and the applicable mortality table described in paragraph (d)(2) of this section.  The present value of any optional form of benefit cannot be less than the present value of the normal retirement benefit determined in accordance with the preceding sentence.26 C.F.R. § 1.417(e)-1(d)(1) (emphasis added).

16

recently confirmed that the ERISA statutory requirements (as implemented by the Treasury regulations) must be used for valuing a lump sum payment, stating, "ERISA requires that any lump-sum substitute for an accrued pension benefit be the actuarial equivalent of that benefit." citing 29 U.S.C. § 1054(c)(3); May Dep't Stores Co. v. Federal Ins. Co., 305 F.3d 597, 600 (7th Cir. 2002); Esden v. Bank of Boston, 229 F.3d 154, 164, 173 (2d Cir. 2000).

### ERISA: "Accrued Benefit" and the "Normal Retirement Benefit"

ERISA Section 2(23) defines the term "accrued benefit," in the case of a defined benefit plan, as "the individual's accrued benefit determined under the plan . . . expressed in the form of an annual benefit commencing at normal retirement age." 29 U.S.C. §1002(23)(A). "It should be apparent that this definition does not purport to describe what counts as an 'accrued benefit' for all participants in all qualifying plans. Rather, the statutory definition is a signpost directing [courts] to look at the terms of the plan at issue." Board of Trustees of the Sheet Metal Workers' Nat'l Pension Fund v. Comm. of Internal Rev., 318 F.3d 599, 602-03 (4th Cir. 2003). The Supreme Court has held that "private parties, not the Government, control the level of benefits" provided in ERISA pension plans. Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 511 (1981). The Seventh Circuit evaluated a similar issue involving an "accrued benefit" in Hickey v. Chicago Truck Drivers, Helpers and Warehouse Workers Union, 980 F.2d 465, 468 (7th Cir. 1992); in that case, the Seventh Circuit stated:

The term "accrued benefit" has a statutory meaning, and the parties cannot

change that meaning by simply labeling certain benefits as "accrued benefits" and others, such as the COLA, as "supplementary benefits." An accrued benefit is, "in the case of a defined benefit plan, ... an annual benefit commencing at normal retirement age." 29 U.S.C. § 1002(23) (1984). We first determine what Congress meant by this definition, and then examine the Plan, as a whole, to determine which benefits created by the Plan fall within that definition.

"Accrued" benefits refers to those normal retirement benefits that an employee has earned at any given time during the course of employment. Vallone v. CNA Fin. Corp., 375 F.3d 623, 635 (7th Cir. 2004). Put another way, "[a]n employee's accrued benefit at any particular point in time is what a fully vested employee would be entitled to receive under the terms of the plan if employment ceased at that particular point in time." Ashenbaugh v. Crucible Inc., 854 F.2d 1516, 1524 (3d Cir. 1988)).

In conducting this analysis, it is also appropriate to consider the views of the agencies responsible for enforcing ERISA; to do otherwise would be to "embark upon a voyage without a compass." Kohl v. Assoc. of Trial Lawyers of America, 183 F.R.D. 475, 482 (D. Md. 1998) (quoting Mead Corp. v. B.E. Tilley, 490 U.S. 714, 726 (1989) (citing Ford Motor Credit Co. v. Milhollin, 444 U.S. 555, 568 (1980)). The Internal Revenue Code and its supporting regulations expressly exclude from the definition of "accrued benefit" the value of an early retirement subsidy or any subsidized value in a joint and survivor annuity. See 29 U.S.C. §411(a)(7); 29 C.F.R. §1.411(a)-7(a)(ii). While to date no definition of "retirement-type subsidy" is contained in ERISA, the regulations and the legislative history of ERISA § 204(g)(2) define a benefit subsidy as "the excess of the value of a benefit over the actuarial equivalent of the normal retirement

benefit."  S. Rep. No. 575, 98th Cong., 2d Sess. 28, <u>reprinted in</u> 1984 U.S.C.C.A.N. 2547,

2574.  The legislative history further provides that a retirement-type subsidy is a subsidy

that continues after retirement.  S. Rep. No. 575, 98th Cong., 2d Sess. 30, <u>reprinted in</u>

1984 U.S.C.C.A.N. 2547, 2576.

Question 39 from the "Gray Book"[8] of the March 1994 Enrolled Actuaries

Meeting asks:

> A plan provides for lump sum distributions based on actuarial equivalent
> interest rates equal to the PBGC interest rates on lump sums in plan
> terminations (i.e., the 417(e) rates). The plan also provides for annual
> post-retirement cost-of-living increases based on the National
> Cost-of-Living index, but not to exceed 3% in any year. The plan states that
> for lump sum determination, it is assumed that there would be no increase
> in the COL index.
>
> RESPONSE
>
> Subject to section 415 (discussed below), an automatic cost-of-living
> provision is an integral part of the participant's accrued benefit and,
> therefore, must be taken into account when determining amounts payable
> under optional forms of benefit. The assumption that there will be no
> increase in the COL index in determining the lump sum would not be
> reasonable and, therefore, would result in the impermissible - forfeiture of
> accrued benefits under section 411.

AROOO 13.

Our research discloses that two courts have considered issues similar to the one

presented here, in each case holding that employees were entitled to larger lump-sums

---

[8] The Enrolled Actuaries Report published by the American Academy of Actuaries in the
summer of 2004 states that "[t]he Gray Book is a compilation of IRS responses to questions
from pension practitioners regarding unusual situations or areas in which the Internal Revenue
Code and regulations are unclear, insufficiently specific, contradictory, or silent."  Vol. 29, No. 2
at p. 5.

because the plans excluded the value of the COLAs.  See Laurenzano v. Blue Cross &

Blue Shield of Mass., Inc. Ret. Income Trust, 134 F. Supp. 2d 189, 199-204 (D. Mass.

2001) (Young, C.J.); and Kohl v. ATLA Pension Plan, 183 F.R.D. 475 (D. Md.1998)

(Williams, J.).  The courts in both Laurenzano and Kohl, discussed below, primarily and

specifically relied on the Seventh Circuit holding in Hickey v. Chicago Truck Drivers,

Helpers and Warehouse Workers Union, 980 F.2d 465 (7th Cir. 1992); See, Laurenzano,

134 F. Supp. 2d at 199, and Kohl, 183 F.R.D. at 479.

  In Hickey, the Seventh Circuit affirmed the trial court's ruling which granted

partial summary judgment in favor of the plaintiff employees ruling that the COLA

prescribed by the employer's Plan was an accrued benefit and, therefore, its elimination

was a decrease of the accrued benefit in violation of ERISA.  The Seventh Circuit opinion

concluded:

> A participant's right to have his basic benefit adjusted for changes in the
> cost-of-living accrued each year along with the right to the basic benefit.  A
> participant's entitlement to his or her normal retirement benefit included, as
> one component, the right to have the benefits adjusted pursuant to the
> COLA provision.

980 F.2d at 469.  See also Treasury Regulation 1.417(a)-7 (defining accrued benefit as an

annual benefit commencing at normal retirement age).  In Hickey, the Plan had been

amended to add a COLA to all retirement benefits.  The court noticed that the COLA

adjusted the computed benefit rather than providing a separate optional benefit.  "A

participant's right to have his basic benefit adjusted for changes in the cost-of-living

accrued each year along with the right to the basic benefit.  A participant's entitlement to

his or her normal retirement benefit included, as one component, the right to have the

benefits adjusted pursuant to the COLA provision."  Id. at 469.

In reaching its conclusion in Hickey, the Seventh Circuit examined the legislative

history which informed the term, "accrued benefit," concluding:

> The 'primary function' of accrued benefits is to 'provide retirement
> income.' As such, accrued benefits do not encompass such items as the
> value of the right to receive benefits commencing at an age before normal
> retirement age, or so-called social security supplements which are
> commonly paid in the case of early retirement but then cease when the
> retiree attains the age when he is entitled to receive current social security
> benefits....

Hickey, 980 F.3d at 467 (quoting H.R. Rep. N. 93-807, 93rd Cong. 2d Sess. 60 (1974),

reprinted in II Legislative History at 3180).  "The COLA is an accrued benefit: its

primary purpose is to provide retirement income, it commences only at retirement, and it

is not a benefit generally transferable to succeeding employers."  Id.

Laurenzano v. Blue Cross and Blue Shield of Massachusetts, Inc. Retirement

Income Trust, 134 F. Supp. 2d 189 (D. Mass., 2001) is a case very similar to the one

presently before us.  In Laurenzano, upon separation of his employment, rather than

receive a life annuity, Laurenzano elected to receive a lump sum distribution, which did

not include the present value of projected COLA payments.  The district court held, "If a

defined benefit pension plan normally provides retirement benefits in the form of a life

annuity that includes a cost-of-living adjustment ("COLA")," a lump sum distribution in

lieu of the annuity must include the present value of the projected COLA payments.

Laurenzano, 134 F. Supp. 2d at 191 (noting that Section 5.7 of the plan at issue adds a

COLA to certain Accrued Benefits while excluding the COLA from lump sum distributions.  Id. at 192).  In Laurenzano, the district court held that the plan provided only one definition of accrued benefit, but it was not consonant with the legal definition of "accrued benefit."  Under the plan, the "annual benefit commencing at normal retirement age" was an annuity with COLA payments.  Given the reality of the plan, as opposed to its legally-meaningless terminology, the "accrued benefit" under the plan included COLA payments.  Laurenzano, F. Supp. 2d at 200-201.  Initially, the plan terms in Laurenzano did not clearly exclude the COLA from the plan's accrued benefit definition:

> A Participant's "Pre-1995 Accrued Benefit" shall be subject to an annual [COLA] as of each January 1, beginning the January 1 next following the date benefit payments commence. . . . For purposes of this Section 5.7, a Participant's "Pre-1995 Accrued Benefit" is any portion of the benefit payable to the Participant under the Plan (other than a lump sum benefit) that is attributable to such Participant's Accrued Benefit determined as of December 31, 1994 on the basis of the Participant's Final Average Compensation and Credited Service determined as of December 31, 1994.

134 F. Supp. 2d at 192.  In Laurenzano, the plan's exclusion of the COLA for lump sum distributions was placed in a parenthetical at the end of the plan provision adding the COLA enhancement.  In addition, the COLA was discussed in the same plan provision that defined the accrued benefit under the plan.

In Kohl v. Association of Trial Lawyers of America, 183 F.R.D. 475 (D. Md. 1998), a pension plan participant brought a class action alleging that the plan administrator violated ERISA by failing to include a COLA when making a lump-sum

payment.  On cross-motions for summary judgment, the district court held that

participants receiving retirement benefits in lump-sum payment were entitled to COLA.

In Kohl, the court treated the issue as a matter of contract interpretation, determining

whether, under the Plan's language, a COLA applied to a lump sum payment or not.  The

Court noted that under Section 1054 a participant's accrued benefits must be the actuarial

equivalent of what her normal retirement benefits would have been when computed under

the plan. However, by its own terms, the Plan required the lump sum cash option to be

equal to the Value of the 10-year annuity option.  Id. at 482.

     While we have found no case directly on point, our review of circuit court

opinions reveals that most courts have construed a COLA as an accrued benefit.  Hickey,

supra; Shaw v. International Ass'n of Machinists and Aerospace Workers Pension Plans,

750 F.2d 1458, 1463 (9th Cir. 1995) ("living pension" which increased age 65 benefit

every year is an "accrued benefit"), cert. denied, 471 U.S. 1137 (1985); and Schaefer v.

Arkansas Medical Soc., 853 F.2d 1487, 1488 (8th Cir. 1988) (affirming unpublished

district court decision holding that COLA is an "accrued pension benefit"); see also,

Board of Trustees of Sheet Metal Workers' Natl. Pension Fund v. C.I.R., 318 F.3d 599,

605 n.2 (4th Cir. 2003) (COLA granted after employment terminated is not an accrued

benefit, distinguishing Hickey and Shaw because COLA benefits there were earned

during period of employment).[9]

_____

     [9] Defendants argue that other federal courts have held that a COLA enhancement
does not qualify as an accrued benefit under the relevant plan documents.  Defendants

(continued...)

The Defendant Plan cannot contest that some courts have previously found a promised COLA to be an accrued benefit under the plans at issue in those cases. However, Defendant argues that no such COLA benefits were promised under this Plan. Under the Plan's unambiguous terms, Defendant contends, the COLA enhancement available to Participants receiving a monthly payments of their retirement benefits does not qualify as an Accrued Benefit, and the BAC's decision to deny Williams's benefit claim does not violate ERISA.   Therefore, the Court should grant the Plan judgment as a matter of law on Williams's class action complaint. Def. Memo in Supp. Of S.J. at 32 - 33.

Defendant seeks to distinguish each of the cases that hold that a COLA is an accrued benefit.  In Hickey, the Plan at issue specifically provided that the COLA, which

---

[9](...continued)
cite Bd. of Trustees of the Sheet Metal Workers ' Nat 'l Pens. Fund v. Comm. of Internal Rev., 318 F.3d 599, 604 (4th Cir. 2003) and San Diego AFL-CIO Bus Drivers Local Div. 1309 of the Amalgamated Transit Union, No. 93-55108, 1994 U.S. App. LEXIS 13167, * 13-14 (9th Cir. May 19, 1994).  In both cases, COLA enhancements were not part of a participant's accrued benefit because the COLAS were not earned as a result of service, but instead were discretionarily granted after a participant's service had concluded and were expressly limited in duration as opposed to for the duration of the participant's post-retirement life.  LaBrosse v. Trustees of the Asbestos Workers Local 47 Ret. Trust Plan, 186 F. Supp. 2d 791, 796 (W.D. Mich. 200 I), deals with increases to dollar amounts used in calculating monthly retirement benefits (from $3 in 1956 to $45 in 1998). Id. at 793. The plan document did not guarantee any future increases, and the decisions to provide increases were discretionary.  Thus, the Court held that because no obligation ever existed to provide further increases, and (unlike future COLA increases) the retirees had not accrued the right to those increases prior to retirement, the retirees' accrued benefits were not cut-back by a post- retirement decision to no longer grant the retirees' additional increases.  Id. at 796.

was added by amendment, was applicable to all retirement benefits.  980 F.2d at 466-67.

In <u>Kohl</u>, the Court held that the terms of the plan document at issue control whether a

COLA enhancement qualifies as an accrued benefit and determined that the plan

document at issue was "unclear as to whether a COLA applie[d] to a lump sum payment

or not."  183 F.R.D. at 480.  Regarding <u>Laurenzano</u>, the Defendant argues that it is

inapplicable because it incorrectly applies the definition of accrued benefit under ERISA.

Def. Mem. for Summ. J. at 21.

Defendant also focuses on a few words in the definition of "accrued benefit" to

argue that an "accrued benefit" must be determined by the plan.  Defendant asserts that at

the time of his termination and retirement on March 31, 1997, Williams stopped accruing

benefits under the Plan's terms.  Therefore, because a COLA enhancement is available

only when the Accrued Benefit is already being paid monthly to eligible Participants, the

COLA enhancement could not be considered to be a part of Williams's Accrued Benefit

under the Plan.  Put another way, an enhancement (the COLA or any other) that becomes

payable to a Participant after his retirement date and after he has begun receiving benefits

from the Plan cannot qualify as an Accrued Benefit because the enhancement was not

earned during the course of employment.  Def. Memo in Supp. Of S.J. at 25.  In sum, the

COLA only becomes a factor after the Accrued Benefit is locked in and the Participant

elects a payment method.  This analysis dictates that the Plan's SPD correctly states that

"the COLA is a benefit enhancement which is not part of your Accrued Benefit under the

Plan and is not required by law," and the BAC's decision to deny Williams's benefit

25

claim was proper and reasonable.   See Facts ¶22; Def. Memo in Supp. Of S.J. at 25.

Defendant further argues that the Plan at issue here unambiguously states that a Participant is only eligible to receive a COLA enhancement after he voluntarily elects to receive his Accrued Benefit in a monthly payment and after he has begun receiving his distribution in monthly payments—which, by the Plan's terms and application, is after the Participant's Accrued Benefit has been calculated.  In response to Williams's argument that the COLA "accrued" over the period of his participation in the Plan, Defendant invokes the Plan's express terms, wherein a Participant does not become eligible to receive a COLA enhancement until (1) he has elected a monthly payment option; (2) he has begun receiving his Accrued Benefit; and (3) his Accrued Benefit is paid through a monthly payment optional form.

We repeat ERISA's definition of "accrued benefit" for emphasis: "Accrued benefit" means "the individual's accrued benefit determined under the plan and, except as provided in [ERISA § 204(c)(3) ], *expressed in the form of an annual benefit commencing at normal retirement age*." ERISA § 3(23) (emphasis added).  Thus, as mentioned above, ERISA requires that any Plan definition of "accrued benefit" depends on the "annual benefit commencing at normal retirement age." See Laurenzano, 134 F. Supp. 2d at 200.

It is undisputed that the COLA at issue in the case at bar provides retirement income in the form of an annual benefit at retirement age. See Coyle Deposition, p. 31; 1994 Plan, Article XV, AR 00078-79; 2001 Plan, Article X, AR 001 93-94.  "The COLA is an accrued benefit: its primary purpose is to provide retirement income, it commences

26

only at retirement, and it is not a benefit generally transferable to succeeding employers." See Hickey.

The automatic COLA provided by the Plan is part of the annual benefit payable to a participant for the rest of his or her life. Pl. Memo. in Supp. of Summ. J. at 7; see, e.g., ERISA § 3(23), IRC § 411(a)(7) and Treasury Regulation 1.417(a)-7 (defining accrued benefit as an annual benefit commencing at normal retirement age). Under the Plan (and the law), this increasing annuity stream continues for the rest of the participant's life. See, 1994 Plan, Article XV, AR 00078-79; 2001 Plan, Article X, AR 00193-94.

Defendant contends that the word "express" found in ERISA's definition of the term "accrued benefit" means only that the Accrued Benefit must be set, as a base, using the monthly single life annuity—not that the benefits will be paid as a monthly single life annuity or that each Participant receives all of the rights and enhancements available under that benefit payment option. Stated otherwise, the COLA enhancement is only provided under the Plan when a Participant elects a monthly distribution payment option—at that time, the Participant's Accrued Benefit will be enhanced as required by the Plan. Because the COLA "accrues," if at all, after a Participant elects to receive payment of his or her benefits through a monthly payment option, the COLA cannot be considered an Accrued Benefit for Participants, like Williams, who voluntarily elected to receive their Accrued Benefit in a lump sum before a COLA could attach. Def. Memo in Supp. of S.J. at 28.

As we have previously noted, "The term 'accrued benefit' has a statutory meaning,

27

and the parties cannot change that meaning by simply labeling certain benefits as 'accrued benefits' and others, such as the COLA, as 'supplementary benefits.'"  Hickey, 980 F.2d at 468.  We know of no court decision to hold that a COLA earned during a period of employment is not an accrued benefit under ERISA.  Defendant appears to claim that the COLA exists outside ERISA's protections during the participant's employment, but instantly attaches to his accrued benefit if he chooses the monthly payment option.  However, if the COLA is part of the annuity (and it is), then ERISA requires it to be included in the Class's lump sum distributions.

Finally, Defendant argues that Plaintiffs would be unjustly enriched if the Plan were required to add a COLA enhancement to its lump sum distribution.  More specifically, Defendant contends that if Williams's lump sum calculation were to include the COLA, he and others receiving a lump sum distribution would be unjustly enriched vis-à-vis other Plan participants because they would effectively receive the value of the COLA twice: once through the monetary growth of their lump sum distribution received through investment since retirement and a second through the valuing of the COLA as monetary damages in this case.  Def. Mem. for Summ. J. at 16.  Such a result, in itself, would violate ERISA, the Plan contends, because it would grant Williams and the class members benefits greater than those received by other Participants who opted to receive monthly payments.

We believe the Defendant's suggestion that the Class would receive a windfall by receiving the COLA as well as any earned investment income to be factually incorrect.

28

See, e.g., Poulin Report, pp. 2-3.  ERISA § 205(g)(3) includes, as part of determining

present value, a discount for all years that the participant's age predates his normal

retirement age. This discount is computed using market interest rates--currently the 30-

year Treasury Bond rate--to reflect the fact that the participant can invest the lump sum.

Poulin Report, pp. 2-3.  To claim that the Class would somehow receive more under the

Plan than participants electing an annuity ignores the fact that the lump sum calculations

were already reduced to offset the time value of money.

     After careful consideration of the meaning of "accrued benefit" and the terms of

the Plan, we hold that this Plan violated ERISA, 29 U.S.C. 1054(c)(3),[10] by failing to

include in Williams's and the class members' lump sum distributions the value of the

COLA enhancement expressly available to those receiving monthly payments of their

Accrued Benefit under the Plan.  Specifically, the Plan's definition of "Accrued Benefits"

does not satisfy ERISA's definition of that term because the COLA enhancement was not

included when calculating the value of his lump sum distribution.[11]

     In reaching this conclusion, that a COLA must be deemed an accrued benefit under the

---

[10] This section mandates that if a defined benefit pension plan provides for a form of payment other than a life annuity beginning at normal retirement age (the "normal retirement benefit"), then this optional form must be the actuarial equivalent of the annuity.

[11]  Because we grant Plaintiffs' motion for summary judgment for the reasons discussed herein, we decline to discuss the three, additional arguments raised by Plaintiffs: that the failing to include the COLA in calculating the lump sum distribution violates the present value requirements of section 205(g), the back-loading rules of section 204(b) and the forfeiture rules of section 203(a).

circumstances of this Plan when construed in light of ERISA and controlling Seventh Circuit

precedent, we acknowledge that substantial complications in administering such a provision may

result.  COLAs are typically both speculative and contingent, turning on future

economic tides which are unknowable at the time a lump sum payment is made, but the fact of such

complications in terms of drafting and administering the plans can not alter the results of our

analysis.

<u>CONCLUSION</u>

For the above reasons, Defendant's Motion for Summary Judgment is <u>DENIED</u>

and Plaintiffs' Motion for Summary Judgment is <u>GRANTED</u>.


IT IS SO ORDERED.


Date:   12/22/2005

_Sarah Evans Barker_
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana


Copy to:

William Kieffer Carr
firm@pension-law.com

Linda Marie Doyle
MCDERMOTT WILL & EMERY LLP
ldoyle@mwe.com

Michael T. Graham
MCDERMOTT WILL & EMERY LLP
mgraham@mwe.com

Steven A. Katz
KOREIN TILLERY

skatz@koreintillery.com

T. J. Smith
tjsmith@smithhelman.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com