UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| GARY WILLIAMS and NANCY MEEHAN, Individually and on behalf of all others similarly situated,<br>    Plaintiffs,<br><br>    vs.<br><br>ROHM AND HAAS PENSION PLAN,<br>    Defendant. | )<br>)<br>)<br>)<br>)   4:04-CV-0078-SEB-WGH<br>)<br>)<br>)<br>) |

**FINAL ORDER APPROVING CLASS SETTLEMENT
AND DENYING PENDING MOTIONS**

This class action arises out of the failure of the Rohm and Haas Pension Plan to include in retiree lump sum pension distributions the present value of future cost-of-living adjustments (COLA), which retirees electing annual annuity payments receive. This Court certified the class on October 10, 2004 as follows:

> "All former participants in the Rohm & Haas Pension Plan (the "Plan") who received a lump sum distribution from the Plan which did not take into account a cost of living adjustment in calculating the lump sum distribution."

After almost eight years of zealous advocacy by both sides to this litigation,[1] and minimal progress with settlement discussions, the parties jointly requested and received a stay of the litigation in April 2009, to attempt a mediated resolution to the dispute. On

---

[1] The Seventh Circuit's opinion in *Williams v. Rohm and Haas Pension Plan*, 497 F.3d 710 (7th Cir. 2007), and our order of October 17, 2008, set out in detail the chronology of this and earlier related litigation and can be referenced for additional factual detail.

November 18, 2009, the parties informed the Court that they had finally achieved a settlement and filed a joint motion seeking preliminary approval of a proposed settlement (the "Settlement") of class claims.

On November 24, 2009, the parties appeared by counsel at a pre-notification hearing, the purpose of which was to determine whether the proposed settlement was in the range of possible approval. *Gautreax v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982). In connection with that hearing, they provided the Court with additional detail regarding the proposed Settlement, which divides the class into two Settlement Subclasses:

> Subclass One - All participants and beneficiaries in the Rohm and Haas Company Retirement Plan, or any predecessor plan thereto (collectively, the "Plan"), who (1) received a lump sum benefit distribution from the Plan on or before December 31, 2009, which lump sum did not include any COLA value; or (2) elected to receive a lump sum benefit distribution on or before December 31, 2009, with the lump sum to be paid after December 31, 2009. (However, no participant or beneficiary shall be considered a member of Subclass One to the extent that his/her underlying annuity benefit is not eligible for a COLA under the terms of the Plan.)
>
> Subclass Two - All participants and beneficiaries in the Plan on or before December 31, 2008, who are not members of Subclass One, and who are eligible or required to receive a lump sum benefit distribution from the Plan after December 31, 2009. (However, no participant or beneficiary shall be considered a member of Subclass Two to the extent that his/her underlying benefit is not eligible for a COLA under the terms of the Plan.)

Following the hearing on November 24, 2009, we preliminarily approved the Settlement and certified the two Settlement Subclasses. In addition, we set a formal Fairness Hearing for March 12, 2010, to hear objections and determine whether the

proposed Settlement, on a class-wide basis, should be approved by the Court as fair, reasonable and adequate; to determine whether final judgment should issue; and to consider the amount of fees and expenses that should be awarded to counsel representing the Class.[2]  The Court also ordered that the Notice attached to the Settlement Agreement as Exhibit B, and as modified by the Court,  be mailed to the last known addresses of Class Members, in order to inform them of the proposed Settlement and notify them of their right to object to the same.  Counsel made diligent efforts to follow-up when original notices were returned as undeliverable to locate accurate current addresses and notice of the proposed Settlement was also set forth on a Web site.

Federal courts favor settlements of class actions; however, a fairness hearing is required to allow all interested parties to be heard and all relevant information adduced so that the court is able to rule intelligently on whether  a proposed resolution is fair, reasonable and adequate.  *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir.1996).  In making that determination, the Court is to consider a number of factors relating to the merits and complexity of the claims, the circumstances of the settlement, and any objections to the settlement. *See, e.g.*, *Hiram Walker & Sons*, 768 F.2d 884, 889 (7th Cir. 1985).  For

---

[2]At the March 12 hearing, the Court took comments and objections on the attorney fees requested by class counsel and considered the manner in which the Settlement has been structured to accommodate fees and costs, but reserved a decision on the amount of fees to be awarded to class counsel until such time as a ruling can issue on the separate Motion For Attorney Fees and Incentive Award filed by Plaintiffs on March 5, 2010.  The amount of fees requested is by any measure significant (more than $43 million), and it should be noted that any amount representing the difference between the amount of fees requested and the amount awarded will flow back into the aggregate settlement pot.

example, we examine the procedural history of the case and assess whether fraud or collusion appears to exist.  We look at the complexity, duration and expense of the litigation and compare the strengths and weaknesses of the parties' positions on dispositive issues and evaluate the risks associated with furtherlitigation, including appellate risk.  *Id*. at 891.  The experience and opinions of the attorneys and any insight from other knowledgeable participants, including absent class members, provide us with an additional measure.  *Id.*  at 889.  Our review includes all written and oral objections.  We focus not on a single item of consideration, but rather view all these elements in their entirety to assess fairness.  *Isby,* 75 F.3d at 1199.  Based on our consideration of these factors, the Court now finds, as explained below, that the Settlement is, indeed, fair, adequate and reasonable and should therefore be finally approved.

### *The Settlement*

In summary, the Settlement requires the Plan to make significant monetary payments to class members in both of the Settlement Subclasses.  The estimated aggregate settlement value is  $180 million which, after awards of attorney fees and incentive payments to named plaintiffs are deducted, will be spread over nearly 18,000 class members with 50% of the amount due each  being paid no later than September 30, 2010 and the remaining 50% a year later.  The Settlement applies a formula to members of both Settlement Subclasses to determine the additional lump sum distribution each of those individuals is entitled to, utilizing a 1.63% COLA multiplier for eligible benefits.

Applying the formula, the additional lump sum paid to members of both subclasses will equal the greater of:

>(i) [the lump sum the class member would have received had it been based on the Plan's age-65 annuity plan plus a projected COLA] minus [the lump sum the class member actually received, which did not include the value of a projected COLA], and

>(ii) [a fixed percentage, estimated to be approximately 3.5%] of [the lump sum the Class member actually received, which did not include the value of a projected COLA]. The final exact percentage is to be determined after receipt of additional data, such as any reduction in the amount of attorney fees awarded from the amount requested.

The average recovery under prong (i) will be higher than the average recovery under prong (ii) of the formula, when measured as a percentage of the class member's original lump sum benefit. As a general matter, class members who were not eligible for subsidized early retirement benefits can expect to receive a settlement benefit calculated under Part (i) of the formula. Class members who received subsidized early retirement benefits can expect to receive a benefit calculated under Part (ii) of the formula, although the formula ensures that all participants receive the ERISA § 204(c)(3) statutory minimum lump sum. This difference reflects a discount for Class members whose lump sums were based on the value of subsidized early retirement annuities. The basis for such a discount is the material risk those class members faced of receiving no recovery in this case had the Plan's approach to calculating relief not been adopted by the Court.

In our order of October 17, 2008, we addressed the claim accrual and statute of

limitations issues and ruled that the limitations period of 90 days for filing suit following a final denial of a claim for benefits, as set forth in the Plan as amended in 2001, would apply and that Williams's timely filing operated to the benefit of the entire class. We considered, but rejected, debatable alternatives for importing and applying other statutes of limitations periods or fixing other claim accrual dates. In order to accommodate the difference in risks attributable to the different statutes of limitations which might have been applied to the claims of class members who received their lump sum distributions years ago and those who received their's more recently, the Settlement calls for the application of different interest rates to the settlement distributions, depending on the time frame during which a class member received his or her original distribution, as follows:

> Members of Subclass One who received their original lump sum benefit after June 27, 1992, are eligible to receive interest on their additional lump sum benefit. Interest will be applied from the date of original payment to September 30, 2010.
>
> Members of Subclass One who received their original lump sum benefits after March 19, 1999, will receive interest at 8.58% compounded annually, representing the average prime rate of interest in effect on January 1 of each year in the three year period of 1999-2001. This is the highest interest rate to be paid and reflects the fact that these individual class members would be the most likely to prevail in any appeal of the statute of limitations issue.
>
> Members of Subclass One who received their original lump sum benefits between June 28, 1992, and March 19, 1999, will receive interest at 3.79% compounded annually, representing the average rate of interest on one-year Treasury bills in effect on January 1 of each year in the three year period from 1992-1994. This reduced interest rate reflects the fact that this group of class members faces a material risk of not prevailing in any appeal of the statute of limitations issues.
>
> Members of Subclass One who received their original lump sum benefit

before June 28, 1992, will receive no interest on their additional lump sum benefit because they face the greatest risk of not prevailing in any appeal of the statute of limitations issues.

Members of Subclass Two will receive no interest on their additional lump sum benefits because, unlike Subclass One members, they have not experienced any delay in payment.

### *Objections*

The Court has carefully considered all the objections raised by both individual class members and those groups who are represented by counsel. Of the nearly 18,000 class members, the Court received objections from approximately 150 class members (give or take a few depending on whether the names of individual objectors have been double counted in connection with groups who are represented by counsel), the vast majority of which were members of two groups represented by counsel, whom we will discuss in greater detail. Considering the extremely large number in the class, this rather small number of objectors indicates to the Court that, generally speaking, there is significant support for this negotiated resolution among class members.

While we will not discuss each point raised by every single objector, we believe that the objections can be fairly grouped into three categories:

1. Objections to the smaller allocation of settlement dollars to those who received their lump sum distributions earlier in time.

2. Objections to discounting the amount of the settlement distributions received by those who received "subsidized" early retirement lump sum distributions.

>   3. Objections to the overall amount of the settlement (which drives the
>   1.63% COLA calculation) and the amount of attorney fees requested by
>   class counsel.

The issue of when a particular claim accrued and what statute of limitations would apply in this litigation was hotly contested. Indeed, persuasive arguments were made for importing periods of repose from two up to ten years. However, because of defense positions adopted and advanced early on in this litigation with respect to a claims exhaustion requirement, and Rohm and Haas's prior decision to amend the Plan so that it in effect established its own in-Plan period of limitations for challenging a final claim denial, we found it unnecessary to import a state statute of limitations. While we remain confident that this was the correct decision, we do not presume infallibility, especially in light of widely divergent views on these issues among some of the nation's best legal minds. We find fair, reasonable and, indeed, quite creative, the choice to use different interest rates (including the decision to award no interest to those who received their original lump sum distribution prior to June 28, 1992) to reflect the relative risks assumed by class members who would be negatively affected by any change in our accrual and statute of limitations rulings on appeal. The choice to apply varying interest rates as a way to implement an appropriate discount was clearly and fairly arrived at through arms-length negotiations between and among some exceptionally talented attorneys, with help from some equally experienced and talented mediators.

The law firm of Miller & Fisher represents a group of sixteen individuals who will

receive no interest on their settlement distributions because they received their original lump sum distributions prior to June 28, 1992. In addition to objecting to the settlement based on their belief that they were not properly represented in the negotiations by Class Counsel, they also seek to establish a settlement subclass for those who received their lump sum distributions before June 28, 1992, and have filed a Motion to Certify Subclass to that effect. They contend that further negotiations on behalf of themselves and additional represented subclass members would result in a more appropriate distribution of the $180 million dollar aggregate settlement; they take no issue with that overall amount, only with their share of it.[3] However, the Court has neither observed nor otherwise been made aware of any evidence indicating that this proposed subclass has suffered from inattention or lack of advocacy on its behalf. Quite the contrary, from our observations, class counsel has advocated on behalf of this group of class members extremely effectively. Class Counsel, for example, successfully argued against importing <u>any</u> state limitations period, which has allowed these individuals to receive an allocation of settlement dollars, when a decision to import even the most generous ten-year statute of limitations would have left these individuals entirely out in the cold. Class Counsel recognized that the risks to any recovery faced by these individuals, if there were an appeal, was greater than with any other group within the class and thus determined to

---

[3] These objectors also maintain that if there is no separate subclass established for them, they should be allowed to opt-out. They cite no ERISA pension case where such an opt-out has been allowed, and we find that this type of complex pension litigation is not amenable to the opt-out provisions as contained within Fed.R.Civ.P. 23.

discounted their overall distribution accordingly. This reasoned approach does not justify an attack on counsel's allegiance to these and all other class members. Accordingly, their objection is overruled and their Motion to Certify Subclass is denied.

A second, larger group of objectors (129) is represented by attorneys Alice Ballard, Robert LaRocca and the law firm of Krieg Devault as local counsel. They object to the discount written into the settlement formula for those who received subsidized lump sum early retirement packages.[4] They repeat the argument that they were not appropriately represented in the settlement negotiations, but, unlike the group of objectors represented by Miller & Fisher, this group takes issue with the overall aggregate amount of the settlement and the amount of attorneys fees sought by class counsel.

As pertains to this group of early retirees, the settlement formula calls for the COLA to be applied after "backing out" the amount of any early retirement subsidy. This calculated amount is then compared to the amount of the lump sum payment the individual retiree actually received. If the amount the retiree actually received is greater than the amount to which he would have been entitled, if he had received an amount based upon an annuity calculated on regular retirement age plus the COLA, then that retiree receives the minimum settlement of approximately 3.5% of the amount actually

---

[4]In general, in using the term "subsidized," we refer to the fact that, by paying to these retirees who left before normal retirement age a lump sum calculated on the basis of the present value of an annuity which started immediately, rather than at age 65, the company was subsidizing the individuals' years of retirement prior to their reaching 65 years of age.

received. These objectors argue that this approach is unfair because it represents a misguided attempt by Class Counsel merely to obtain a quick settlement and fee award and based on Counsel's gross miscalculation of the litigation risks associated with fending off a challenge to the requirement that the Plan apply a COLA to the subsidized portion of their lump sum distribution.

We must overrule this objection as well, for the following reasons: Calculating the precise discount applicable to those class members based on the particular litigation risks they face is more a matter of art than mathematics and, because we perceive no basis for concluding that the formula used here exaggerated or ignored known litigation risks, we have no reason not to adopt Class Counsel's recommended approach. Valuing the claims of the various groups of class members is clearly important, but the fairness, reasonableness and adequacy of the Settlement must also be assessed without undue weight being given to any individual component of the agreement. *Isby,* 75 F.3d at 1199.

The situation here is not at all similar to the one found in *Mirafasihi v. Fleet Mortgage Corp.,* 356 F.3d 781 (7th Cir. 2004), a case relied upon by these objectors, where one settlement subclass had received absolutely nothing and the other, much smaller subclass received the entirety of the settlement distribution because, as alleged by class counsel in that case, there would otherwise have been an unacceptably low per capita recovery. *Id.* at 783. In our case, the early retiree objectors are all entitled to

receive a settlement calculated on the basis of a specified minimum percentage.[5] In refusing to affirm the settlement in *Mirafasihi* and remanding the case back to the district court for further proceedings, Circuit Judge Posner wrote:

> Would it be too cynical to speculate that what may be going on here is that class counsel wanted a settlement that would give them a generous fee and Fleet wanted a settlement that would extinguish 1.4 million claims against it at no cost to itself? The settlement that the district judge approved sold these 1.4 million claimants down the river.

*Id.* at 785.

While the attorneys representing the class in our case have petitioned the court to approve a very sizeable fee as remuneration for their work, the Settlement cannot be fairly criticized for having sold any of the class members "down the river." Every class member is receiving a settlement amount that is significant, fair and reasonably calculated to reflect the estimated value of their individual legal claims. The effort expended by all involved in negotiating a careful resolution to this dispute appears to have achieved an equitable result from everyone's perspectives, including the Court's.

A final group objects to the aggregate settlement amount of approximately $180 million, which amount clearly drives the COLA percentage of 1.63%. In our view, the

---

[5] Even in the case of the Objectors' rather manipulative hypothetical example of "Betty vs. Steve," utilized as a demonstrative example at the March 12, 2010 hearing by counsel for the Objectors, "Betty" received a $7,000 settlement distribution.

1.63% projected COLA falls within a reasonable range of estimates of future changes in the United States Consumer Price Index for Urban Wage Earners and Clerical Workers (CPI-W Revised). In addition, this percentage rate represents a fair compromise in light of the overall Settlement Agreement, which includes an arithmetical reduction related to estimated attorney fees and cost awards. Lastly, in light of the costs and risks associated with further litigation, the aggregate amount seems reasonable. Therefore, this objection shall be overruled as well.

Having heard the various objections that were interposed to the overall amount of the attorney fees request during the hearing on March 12, 2010, and having been provided additional written arguments and objections to that amount, we shall nonetheless take under advisement for now the attorney fees issues.

### *Additional Findings & Decrees*

Having overruled the objections to the proposed Settlement, the court hereby enters the following additional findings and decrees:

1. The Court finds that this action satisfies the requirements of Rule 23 and is properly certified as a non-opt-out class, pursuant to Federal Rules of Civil Procedure 23(a)(1)-(4), 23(b)(1), and 23(b)(2), and further finds that the members of the Class have at all times been adequately represented by the Class Representatives and Class counsel.

2. The Court has personal jurisdiction over the Class Members and parties, and the Court has subject matter jurisdiction to approve the Settlement Agreement and all exhibits thereto pursuant to 28U.S.C. § 1331.

3. The Notice provided to the Class fully complied with Fed.R.Civ.P. 23, was the best notice practicable, satisfied all constitutional due process requirements, and provides the Court with jurisdiction over all Class members.

4. The terms and provisions of the Settlement, including all exhibits, have been entered into in good faith, at arm's length and without collusion, and are hereby fully and finally approved as fair, reasonable, adequate and in the best interests of the Class members, and are in full compliance with all applicable requirements of the Federal Rules of Civil Procedure and due process.

5. The Court has carefully considered all of the objections raised to the proposed settlement and overrules those objections as insufficient, both individually and collectively, to call into question the fairness, reasonableness, and adequacy of the proposed settlement.

6. The Court finds that this case presents considerable and ongoing risks at both the trial and appellate levels with respect to the following issues: the appropriate statute of limitations and accrual date, prejudgment interest, and the calculation of relief for Class members who received subsidized early retirement lump sums. Adverse rulings on these

issues could result in no or limited recovery to certain groups of Class members, including many of the objectors. This case presents complex issues that have been litigated for nearly eight years and would likely be litigated for several additional years if there were no settlement.

7. Class counsel are highly competent, nationally recognized specialists in this type of ERISA litigation, and it is their opinion that the settlement should be approved. The case is at an advanced stage, discovery is complete, and the Court has been fully briefed on the facts and issues in this litigation and has determined that all of the appropriate factors compel approval of the settlement.

8. This Final Order incorporates and makes a part hereof: (a) the Settlement Agreement, and (b) the Notice of the proposed settlement previously approved by the Court and distributed to class members. The Court further finds that, except as otherwise explicitly provided in the Plan amendment required by Article III of the Settlement Agreement, the settlement payments to be made to members of Subclass One under the Settlement Agreement properly relate back to each original annuity starting date.

9. The terms of the Settlement Agreement and this Order are declared to be binding on, and to have res judicata and preclusive effect in all pending and future claims, lawsuits or other proceedings encompassed by the Release set forth in the Settlement Agreement.

10. All Class Members are hereby permanently barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as Class Members or otherwise), or receiving any other relief from, any other claim, lawsuit, arbitration, or administrative, regulatory or other proceeding or order in any jurisdiction which are within the terms of the Release set forth in Article IV of the Settlement Agreement. The Court finds that issuance of this permanent injunction is necessary and appropriate in aid of the Court's jurisdiction over the action and to protect and effectuate the Final Order.

11. Nothing in this Final Order shall preclude any action to enforce the terms of the Settlement Agreement.

12. Without in any way affecting the finality of this Final Order, the Court expressly retains jurisdiction as to all matters relating to the administration, consummation, enforcement and interpretation of the Settlement and of this Final Order, and for any other necessary purpose, including, without limitation:

   (a) enforcing the terms and conditions of the Settlement Agreement and resolving any disputes, claims or causes of action that, in whole or in part are related to or arise out of the Settlement Agreement or this Final Order;

   (b) entering such additional Orders as may be necessary or appropriate to protect or effectuate this Final Order approving the Settlement Agreement, dismissing all claims on the merits and with prejudice, and permanently enjoining Class Members from initiating or pursuing related proceedings, or to ensure the fair and orderly administration of this settlement;

   (c) entering any other necessary or appropriate Orders to protect and effectuate this Court's retention of continuing jurisdiction; and

    (d) resolving any other dispute that may arise under the Settlement Agreement.

However, any court may dismiss a Released Claim if such a claim is asserted in such a court.

    13. This action, including all individual and Class claims asserted in it, is hereby dismissed on the merits and with prejudice against Plaintiffs and all other Class Members.

    14. The related lawsuit captioned *Allen et al. v. Rohm and Haas Company Retirement Plan and Rohm and Haas Company*, 4:06-CV-136-SEB-WGH, which was previously stayed and administratively closed, is hereby dismissed on the merits and with prejudice as to the Allen Plaintiffs and any putative Allen class.

    15. By separate Order, the Court will rule upon Class counsel's request for attorneys' fees and costs and an incentive award for Class representative, Gary Williams, to be paid from the fee and cost award. Any attorneys' fees and costs awarded by the Court will be paid in accordance with (and to the extent provided in) the Settlement Agreement. Any other fees or costs incurred by a party will be paid by such party.

    16. The payment of any attorneys' fee and cost award to Class counsel by the Defendant Plan is hereby determined by the Court to be a proper expense of the Plan and the trust thereunder related to maintaining their continuing compliance with ERISA and, therefore, is a reasonable expense of administering the Plan and is neither a settlor expense nor a distribution of benefits to Plan participants and their beneficiaries.

    17. The Court hereby directs the Plaintiffs, Settlement Classes, Class Counsel, the

Defendants and Defense counsel to undertake the necessary steps to effectuate forthwith the Settlement according to its terms.

18. The Objector's Motion to Certify Subclass (Doc. #245), Plaintiff's Motion in Limine (Doc. #260) and Plaintiff's Motion For Relief Regarding Improper Solicitation of Objections (Doc. #257) are all DENIED.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that there is no just reason to delay entry of final judgment and a separate final judgment consistent with this order shall be entered by the Clerk forthwith.

Date: 04/12/2010

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Alice W. Ballard
LAW OFFICE OF ALICE W. BALLARD, PC
awballard@awballard.com

William K. Carr
LAW OFFICE OF WILLIAM K. CARR
bill@pension-law.com

James R. Fisher
MILLER & FISHER LLC
fisher@millerfisher.com

Lee A. Freeman Jr.
JENNER & BLOCK
lfreeman@jenner.com

Michael D. Grabhorn
GRABHORN LAW OFFICE

mdg@grabhornlaw.com

Bart A. Karwath
BARNES & THORNBURG LLP
bart.karwath@btlaw.com

Steven A. Katz
KOREIN TILLERY LLC
skatz@koreintillery.com

Raymond A. Kresge
COZEN O'CONNOR
rkresge@cozen.com

Robert J. LaRocca
KOHN, SWIFT & GRAF, P.C.
rlarocca@kohnswift.com

Robert D. MacGill
BARNES & THORNBURG LLP
rmacgill@btlaw.com

James T. Malysiak
JENNER & BLOCK LLP
jmalysiak@jenner.com

Mark J. R. Merkle
KRIEG DEVAULT LLP
mmerkle@kdlegal.com

Debra H. Miller
MILLER & FISHER LLC
miller@millerfisher.com

Anthony J. Morrone
COZEN O'CONNOR
amorrone@cozen.com

Andrew J. Rolfes
COZEN O'CONNOR
arolfes@cozen.com

T. J. Smith
tjsmith@600westmain.com

Douglas R. Sprong
KOREIN TILLERY LLC
dsprong@koreintillery.com

JERRY L. OLLIFF
3800 McPhillips Road SE
Elizabeth, IN 47117